IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    Plaintiff,

     vs.

CHRISTOPHER D. VILLALPANDO,

                    Defendant.

Case No.  08-CR-098-C

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS

FACTS

On August 29, 2007, at approximately 6:00 p.m., detectives with the City of Madison Police Department observed Christopher Villalpando arrive at 3045 Maple Grove Drive, Madison, Wisconsin, and enter a dwelling.  Shortly thereafter, the officers observed Mr. Villalpando outside walking his dog for a short period of time, before he reentered the dwelling.  Within 15 minutes of his initial entry into the home, Mr. Villalpando left driving in a black Chevrolet SUV bearing Wisconsin license plate number 556LUZ.  Police officers followed the vehicle and eventually pulled it over for speeding.  Police officers contacted the driver, who was identified as Christopher Villalpando.  Apparently Mr. Villalpando, according to police officers, consented to a search of his vehicle, in which was located a plastic bag of marijuana.  The total weight of the marijuana found was 3.6 grams.

The police officer, Denise Markham, then read Mr. Villalpando his Miranda warnings.  (All of the above information, except the weight of the marijuana, is taken from the Affidavit Used to Obtain the Search Warrant which is attached to the original Motion to Suppress.)

Some of the interaction between Mr. Villalpando and Detective Markham was tape recorded by the detective.  The tape recording started at approximately 7:08 p.m., or about an hour and 20 minutes after Mr. Villalpando was pulled over.  Mr. Villalpando incriminated himself.  Mr. Villalpando's position is that a number of promises were made to Mr. Villalpando which induced him to give numerous incriminating statements to Detective Markham.  These statements were the sole basis from which the police officers were able to obtain a search warrant for the premises at 3045 Maple Grove Drive in Madison, Wisconsin.

ARGUMENT

The government bears the burden of showing by a preponderance of the evidence that a confession is voluntary.  Missouri v. Seibert, 542 U.S. 600, 608, n.1, 124 S.Ct. 2601 (2004).  The question for this Court to determine is whether the confession is the product of an essentially free and unconstrained choice by its maker.  If it is, it may be used against the defendant.  If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.  Culombe v. Connecticut, 367 U.S. 568, 602 (1961).

The Seventh Circuit has concluded that the proper test to determine voluntariness is whether the interrogator has resorted to tactics that in the circumstances prevented the suspect from making a rational decision whether to confess or otherwise inculpate himself.  United States v. Baldwin, 60 F.3d 363, 365 (7th Cir. 1995).  A false promise of lenience would be an example of forbidden tactics, for it would impede the suspect from making an informed choice as to whether he was better off confessing or clamming up.  Id., citing United States v. Rutledge, 900 F.2d 1127, 1130 (7th Cir. 1990).

The term "voluntariness" has reflected an accommodation of the complex values implicated in police questioning a subject.  At one end of the spectrum is the acknowledged need for police questioning as a tool for effective enforcement of criminal laws.  At the other end of the

2

spectrum is a set of values reflecting society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness, and that the possibility of unfair and even brutal police tactics poses a real and serious threat to civilized notions of justice. Where there is an involuntary confession, the court enforces the strongly felt attitude of society that important human values are sacrificed where an agency of the government in the course of securing a conviction rings a confession out of an accused against his will. Schneckloth v. Bustamonte, 412 U.S. 218, 225, 226 (1973).

In determining whether a defendant's will has been overborne in a particular case, the court is to assess the totality of all of the surrounding circumstances–both the characteristics of the accused and the details of the interrogation. Id. at 226.

Under Supreme Court and other circuit precedence, a promise of leniency is relevant to determining whether a confession was involuntary and, depending upon the totality of the circumstances, may render a confession coerced. Clanton v. Cooper, 129 F.3d 1147, 1159 (10th Cir. 1997). Clearly, an officer's promise to make a defendant's cooperation known to prosecutors will not produce a coerced confession, as that is a vague and noncommittal promises. However, when specific promises are made, such as that a defendant would spend less time in jail if he cooperates compared to if he does not, that is the type of promise that may indeed critically impair a defendant's capacity for self-determination. United States v. Lopez, 437 F.3d 1059, 1064, 1065 (10th Cir. 2006). There should be a causal connection between the police officer's assurance and the defendant's statement, and the important factor to determine is whether the agent's statements were so manipulative or coercive that they deprive the defendant of his ability to make an unconstrained autonomous decision to confess. United States v. Walton, 10 F.3d 1024, 1029, 1030 (3rd Cir. 1993). Given the uniquely influential nature of a promise from a law enforcement official, that promise of leniency or that promise not to use an inculpatory statement may be the most significant factor in assessing the voluntariness of an accused's confession in light of the totality of the circumstances. Id.

Excessive friendliness on the part of an interrogator can be deceptive. In some instances, in combination with other tactics, it might create an atmosphere in which a suspect forgets that his questioner is in an adversarial role, and thereby prompt admissions that the suspect would ordinarily make only to a friend, not to the police. Miller v. Fenton, 796 F.3d 598, 607 (3rd Cir. 1986). Direct promises of leniency are more coercive than promises that are vague. Miller, supra, at 609.

Applying the law to the facts in this case shows that the Madison police detective had promised Mr. Villalpando that if he put his trust in her (Transcript p. 9), she would go to bat for him that evening (Transcript p. 13); that she would not charge him with anything that evening (Transcript p. 17); and if he was straight about what was in the house (Transcript p. 17), since that is all the detective was looking for (Transcript pp. 17, 18), that she would let him go that evening. The detective informed Mr. Villalpando that if he indicated what was in the house, such as disclosing his safe, his gun, his cash, his scale, and his dope, she would keep him as clean as he can be, that they would meet later on in the week and work this out (Transcript p. 26). She further informed him that after the search warrant was executed and he provided everything in the house, he would be able to mingle off like nothing ever happened (Transcript p. 29), and that after the search warrant was completed, he could go anywhere he wanted (Transcript p. 30). With that in mind, Mr. Villalpando confessed and incriminated himself.

In United States v. Kontny, 238 F.3d 815 (7th Cir. 2001), the court held that a confession is voluntary if under the totality of circumstances the statement is the product of an accused's free and rational choice. Id. at 818. While the court held in Kontny that the statements given by the defendants were not involuntary, the court said:

> We might have a more difficult case had [the police officer] gone further and promised the Kontnys they would not be prosecuted if they played ball with him, for that conceivably is the kind of false promise that might induce a rational person to rely.

Id. at 818. That is exactly what occurred in the present case.

4

We realize that other factors are to be considered when viewing the totality of circumstances.  Mr. Villalpando's education, his intelligence, whether he was given <u>Miranda</u> warnings, the length of the detention, the repeated and prolonged nature of questioning, the use of physical punishment such as deprivation of food or sleep, and Mr. Villalpando's prior experience with the criminal justice system all are factors for this Court to consider.  However, as stated in <u>Kontny</u> and other case law above, when police officers make a specific promise that the defendant will not be prosecuted if he cooperates, that is the type of false promise that would induce a rational person to rely.  That is exactly what happened in this case.

<u>CONCLUSION</u>

For the above stated reasons, the defendant respectfully requests the Court to suppress his statements and the search that was based solely upon his statements as the fruit of the poisonous tree.

Dated this 8th day of October, 2008.

EISENBERG LAW OFFICES, S.C.

/s/ Mark A. Eisenberg
Mark A. Eisenberg
State Bar Number:  01013078
308 E. Washington Avenue
P. O. Box 1069
Madison, WI  53701-1069
Telephone:  (608) 256-8356
Fax:  (608) 256-2875
E-mail: mark@eisenberglaw.org
Attorneys for Defendant, Christopher D. Villalpando

5

_____

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Meredith P. Duchemin, Assistant United States Attorney


/s/ Mark A. Eisenberg
Mark A. Eisenberg