IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                  Plaintiff,

    v.

CHRISTOPHER VILLALPANDO,

                  Defendant.

REPORT AND
RECOMMENDATION

08-cr-98-bbc

_____

**REPORT**

The grand jury has charged defendant Christopher D. Villalpando with possessing cocaine with intent to distribute it and with being a felon in possession of a handgun.  Before the court is Villalpando's motion to suppress his post-arrest statement and to quash a search warrant that Villalpando claims is derived from his statement.  Villalpando contends that his statement was not voluntary because he made it in reliance on the interrogating officer's false promises of leniency. *See* dkt. 22.  The government responds that no false promises were made and that Villalpando exercised his free will at all times during his interaction with police.  As discussed below, the government is correct and this court should deny Villalpando's motion to suppress.

The factual record consists of a recording of Villalpando's interrogation by Madison police officer Denise Markham, a transcript of the interrogation, and a copy of the search warrant and supporting documents. *See* dkts. 23-24.  The recording of the interview literally speaks for itself; a viable alternative is to read the entire transcript.  By way of synopsis, I set forth the facts most salient to Villalpando's motion to suppress:

## FACTS

In August 2007, Christopher Villalpando was about 21 years old, attending college, and serving a term of state probation for drug convictions in Dane County; he also was being investigated by the local drug task force for selling powder cocaine to an informant.  On the evening of August 29, 2007, armed with information that Villalpando likely was carrying marijuana, the task force performed a pretextual traffic stop of his vehicle and found a small amount of the substance.  This augured almost certain revocation of Villalpando's probation.

At 7:08 that evening, MPD Officer Denise Markham, a task force member, begins her recorded interview of Villalpando in her squad car parked near the scene of the traffic stop.  Villalpando knows Officer Markham, greeting her with "What's going on Denise?"  Officer Markham provides *Miranda* rights and confirms that Villalpando had been read his rights before; he confirms that he had been arrested "quite a bit."  Villalpando also confirms that he currently is enrolled in school.  This foreshadows a recurring theme during the interrogation: Villalpando urgently wishes to be released from custody so that he does not miss class, and he is irritated that the task force has resorted to this pretextual arrest rather than simply call him to request a parley.

Officer Markham opens with a bid for cooperation, reporting to Villalpando that he would have a probation hold on him that night "just for those things," but that

> Based on your cooperation, we have some discretion with the District Attorney, okay?  They don't have to charge you.  We don't have to send charges up. We'd like your cooperation.  We'd like your help, okay?  Your probation officer I'm going to have to talk to.  I'm going to have to try and work this stuff out with your PO.  Even just now, even on this stuff, you know, I don't know if you got a good relationship with one or not.  I'm not going to tell

2

> you, you know, "hey, he's not going to do anything
> to you," because I don't know, Juan.  I don't know
> what your relationship is with him.  I know he's not
> going to be happy that you've been living over here,
> telling him that you're living on Leopold.  He won't
> be happy about that, but we can also move that out,
> okay?  What I'd like to do is have my boss call his
> boss and let them know that you're being
> cooperative, we need your help.  It's not going to do
> anybody any good to have you locked up.  We know
> who you know.  We'd like your help, okay?  So this
> is the thing . . ..

Dkt. 23, Transcript (**TR**) at 4.

Villalpando responds "you know, and they tell you it's not what you know, it's who you

know."  He asks "who do you want, if you don't mind me asking?"  Officer Markham responds

that she was not willing to go there yet; Villalpando replies "I understand."  Officer Markham asks

Villalpando if he needs to call his girlfriend to stop her from  making awkward inquiries about why

Villalpando hasn't returned to their apartment.  Villalpando declines, musing that if he's going to

get locked up for something as penny ante as minor possession of weed, so be it.  Officer Markham

tries to reassure him, telling him "we don't have to do anything."  Villalpando is more skeptical:

"Well, see that's the thing though.  You know, the PO makes the last decision.  You guys don't

make the decision about my probation, you know what I mean?" **TR 7**.

The two talk a bit about the marijuana that Villalpando has with him and how much is

left at his apartment; as part of this exchange, Officer Markham asks Villalpando if he's got a safe.

He admits that he does and that he keeps money and a pistol in there.  Officer Markham responds

"Okay. That's cool.  I appreciate your being straight.  OK.  Because you're a felon, right?  See how

3

much progress we're making already, alright?  See, and all you can do right now is put your trust in me.  Chris, I will–"; Villalpando interrupts, observing "that's asking for a lot, Denise."

Villalpando states that he really doesn't want to leave school and go back to jail.  Officer Markham agrees that she is happy to see him doing the right thing and that right now she's helping five other guys stay in school and get their licenses.  Villalpando observes that he owes the school a lot of money; Officer Markham ripostes "you got a lot of money in your safe too, right?  You got a nice little stack in there.  Where's your scale at?"  Villalpando responds that he's got a scale but he thinks it's at his Dad's house; when Officer Markham asks where his dad lives, Villalpando changes his story and admits the scale is in his kitchen back at his apartment.

Officer Markham tries to wrest another admission from Villalpando, asking how much coke he's got back at the place, observing "I thought we were being straight with each other?"  Villalpando declines to answer, observing that it looks like he's going to jail that night anyway; Officer Markham responds that she's going to do everything possible and that she thinks she can keep him out; Villalpando responds "I'll help you if you're going to help me, Denise.  Come on, Denise."  Officer Markham responds that she is going to get out of the squad car and start making phone calls right away, even pull some supervisor away from their dinner to make sure that Villalpando stays out.  She tells Villalpando "you've got to trust that I'm going to go to bat for you tonight."  Villalpando shoots back "it's got to be better than a home run though, Denise . . . if that ain't a home run, Denise– "; Officer Markham interrupts saying that she's got a good history of helping her people.  Villalpando responds that he knows that.

Officer Markham announces that:

> It's in your best interest to do everything and be as honest as possible as you can, then do what seems totally unreasonable and put some faith in me that

4

> I'm going to do everything to help you.  It does me
> no good to see you in jail.  It does me no good to sit
> here with you in the squad car.  I'd rather have you
> in the apartment right now.  Let us get that knocked
> out.  You keep answering the phone like you always
> do and put people off.  And just put them off
> because I don't want anybody thinking anything out
> of the ordinary tonight.

**TR 14.**

Villalpando isn't buying it:  "I'm going to be in jail."  Officer Markham tries to reassure

him, but before she goes out on a limb, she wants to know if Villalpando has more than a kilo of

coke at his place.  Villalpando is indignant: "Hell No!"  Officer Markham explains that she's going

to be calling state probation to ask them not to revoke, that the drug task force needs him; she will

bring in the DEA so that the feds will add their weight to her request.  Villalpando asks "so why

are you waiting for me?  Why don't you talk to them so you can guarantee that if I–if you're going

to help me, I'm going to help you?"  **TR 16.**  Officer Markham responds "because you're not being

honest with me."

Villalpando acts hurt, asking how she can say that?  Officer Markham responds that

Villalpando is not even willing to tell her how much cocaine he's got in the freezer or how much

money in the safe; he hasn't offered to tell her who his source is and has not offered to do

everything he can to help her out.  Officer Markham accuses Villalpando of throwing a *few* things

out to her but he's not throwing *everything* out.  Villalpando is unapologetic:

> Because I'm sitting back looking at you like, "What
> do you expect?"  . . .  Come on Denise, what do you
> expect?  You want me just to sit up here and be like,
> "oh well, yeah," you know what I mean?  . . .  And
> then you're telling me that I'm not going to be –

> you're telling me that I might not even make it to
> class tomorrow!

Officer Markham responds:

> I can tell you right now, I am not charging you with
> anything tonight.  All I got to do is get probation to
> say "OK, have him come in our office tomorrow at
> 8:00."  And you and me and about two detectives
> and maybe somebody from DEA are going to be
> sitting down with your PO and we are going to work
> this out.  We are going to work it out, okay?  But I
> need to know that you're going to be above board
> with me, okay?  So I need to know if you're going to
> be straight about in the house.

**TR 17.**

Villalpando hones in: "If I take you and give you everything that I got, like what do you

want?  Is that all you want is just that? . . . Oh, of course, a gun."  Officer Markham agrees that

yes, they need to get the contraband out of his apartment, and get him back in there with

handcuffs off, answering his phone like he normally does so that nobody knows what's going on.

But Villalpando can't get past the probation hold:

> I just wish you could tell me– tell me that I'm going
> to make it to class tomorrow and I'm not going to
> jail as long as I can help you out.  I know a lot of– I
> mean I'm not– no, I'm not even going to say that.
> I'm not even going to say that because you're going
> to think I'm just throwing some -- playing games and
> I ain't got time for playing games.

**TR 18.**

6

Villalpando explains that his PO is a good guy who hasn't given him a hard time; Officer Markham agrees, and asks if Villalpando is having trouble trusting a cop. Villalpando insists that's not the problem. Officer Markham offers to make a guarantee; Villalpando responds:

> I bet you are. But the whole point is, Denise, that what you're basically telling me is that–is you don't know for sure if I'm not going to be able to go to jail. . . . Now, it'd have been a different story–it'd have been a different story if you'd tell me like, "look Chris, I know what's going on," you know what I mean? "You might not think I don't know what's going on," but if you got me on some buys or whatever you were going to say, "I'm going to come pick you up and I'm going to charge you with this unless you don't show me this. Until then, why don't you give me a call tomorrow." Then I'd taken you seriously. Holy shit!

**TR 20.**

Officer Markham responds that she doesn't threaten people and she's not going to tell Villalpando "if you don't do this, I'm going to do this." Villalpando responds that he knows this but he also understands that if she does a favor for him, then she's going to want a favor back from him. Officer Markham agrees. Villalpando repeats that he would have been a lot happier about all of this if instead of arresting him, Officer Markham would have just called him, told him that they had him on some coke sales and then calendared out a mutually-agreeable meeting with him. "But see, right now is, right now you're trying to hold me on like a leverage, like if I don't come through . . .." Officer Markham protests; Villalpando remains skeptical:

> But you said your word is your word . . . but if I take you there, . . . to the south side . . . you know what I mean? Regardless of where I take you and give you anything and say it's mine, then you've got the right

> to charge me with that down the road, you know
> what I mean? . . . And that's cool because you
> know, you otherwise–because legally I can fuck you
> over and be like, well, you know what I mean? I
> understand what you're saying . . . I told you I
> understand what you're saying, but then again that's
> just at a point where I'm like, "hold on, damn, hold
> up!" You know, it ain't even that, but it's just the
> point . . .

TR 22.

Officer Markham interrupts, asking Villalpando to calm down, that she's going to take the cuffs off, get him out of the car and try to get him comfortable. Villalpando responds "it's fine. I'm trying to just work something out, Denise, that's all."

Officer Markham states that she understands, but she wants to explain it one more time. She tells Villalpando that the task force has enough information to ask the judge for a search warrant for his residence, and they do not need Villalpando's permission to search. Villalpando acknowledges this.

Officer Markham continues: if Villalpando wants, she can take him back up to the apartment, take his handcuffs off, and that she will simply do a protective sweep and not search until they get the warrant. In the meantime, Villalpando will be free to walk around his apartment, use the bathroom and answer his phone while Officer Markham tries to straighten things out with Villalpando's PO. Then some detectives will come up and debrief Villalpando.

Villalpando responds:

> Well, see, the time is, that's what I'm saying Denise.
> You can't– you got to tell me right now – like if you
> would have told me like, right now, like "look, why
> don't you–after I get done with work this time, why
> don't we meet somewhere, we'll talk, I'll tell you

8

> what's going on and what I want you to do." That
> would be a different story because you're trying to
> get leverage on me and you're trying to have me –

Officer Markham interrupts:

> I have leverage on you right now.  You have charges.
> I have enough to ask a judge for a search warrant,
> okay?  . . .  I know there's cocaine in your house.  I
> do, I know that.  I know that because I know people
> who have bought cocaine from you in the last 10
> days and if I tell you how much, you're going to
> know, so I'm not going to say a name.  But I'm not
> here just because I happened to pick you out and say
> "today I'm going to look for Chris."

> **TR 24.**

Villalpando responds "no, I know what you're saying– I know you know– you know that

I know somebody you want.  I don't know who you want."

Officer Markham relies:

> Okay.  This is what I'm going to ask you right now;
> are you willing to go back up to the apartment with
> us?  We'll take the handcuffs off, you can start
> answering your phone, and we'll just sit there and
> wait with you.  Are you–do you want to do that or
> would you rather wait at the precinct?  That's up to
> you.

> **TR 25.**

Villalpando asks why they would go to the precinct; Officer Markham responds that they

would go there to wait for issuance of the search warrant for his residence, because the task force

definitely is going to request a warrant, and it's going to take a couple of hours.  Officer Markham

opines that Villalpando would be more comfortable waiting up at the apartment, and that once

9

the warrant has been executed and after the task force detectives have had a chance fully to debrief Villalpando and get all of his information about the dope at his place, his Dad's place, his brother's place and so on, then they can leave him out on the street.

Villalpando offers to turn over all his contraband without a warrant; Officer Markham declines.  It's cleaner with a warrant; even if Villalpando were to give written permission to search, she still is going to wait for the warrant.  She promises Villalpando that if they go back to his place, she will not search it until the warrant arrives.

Villalpando asks if he can just "mingle off like nothing ever happened."  Officer Markham responds, "yep."  Villalpando apparently thinks he can go mingle off immediately because he offers to meet with her on some later date when she calls him.  But Officer Markham demurs; this isn't going to happen until *after* they get the warrant, which is looking pretty promising.  After the warrant is executed, Officer Markham predicts that Villalpando will be mingling and doing his thing, but that other detectives are going to need him to provide information so that they know that he is on board and that he's going to help himself out.  But no matter what, Villalpando cannot go anywhere that night until after the task force gets the warrant done.  Villalpando tries to make a counter-offer, asking what would happen if he just gives the task force the dope and guns, but Officer Markham interrupts him: "I'm not telling you to give me anything."  The task force is going to get a warrant first because it's cleaner.

Villalpando repeats his irritation at the way that the task force has set this up: he would have been a lot happier if they would have just called him rather than sandbagged him with this probation violation.  Based on this tactic, "you can't promise me I'm not going to jail, you can't promise me nothing."  **TR 31.**

10

Officer Markham responds that she will have some answers in the next 20 minutes. Villalpando replies "Denise, what I'm saying is that, to me, it's like if you would just let me walk away right now and then, like, for me to–whenever you want me to– whenever it's suitable for you or whatever–";  Officer Markham responds that he "most likely" will walk away from this. Villalpando is not satisfied: "see, I don't need no 'most likely' that's what I'm saying is . . . you're asking me for help and I can't help you if you can't help me."  **TR 32.**

Officer Markham clarifies that she can't tell him that he won't go to jail on the probation; what she can promise is that she doesn't not have to charge him that night.  Villalpando is unmollified; he still is upset that the task force is leveraging him with the traffic stop and the probation hold.  Officer Markham responds that this was the only way:

> Otherwise, I could just come to you and say "I think you're a drug dealer.  Can you help me get this other guy?" And you'd be like, "Bye!"  You wouldn't do anything unless we had leverage.

> So look, do you want to go back to the apartment or do you want to go to the precinct?  That's your call. With my word we will not search anything until a judge– . . .

**TR 33.**

Villalpando repeats that he is not worried about the search warrant; he thinks that Officer Markham still does not understand his irritation at the being leveraged: "what I'm saying that leverage is going to mess my probation up and who knows if you're going to be able to pull something off for me?"  **TR 35.**  Officer Markham explains it yet again:

Officer Markham:     Let me tell you this, I've had very good luck
                                        in having people walk away–

11

Villalpando:             See Denise, Denise–

Officer Markham:         You just keep interrupting me!

Villalpando:             I'm sorry, go ahead.

Officer Markham:         Alright.  Most people that are sitting in the back in
                         handcuffs don't have  a lot of choices.  I'm giving
                         you choices tonight, okay?

Villalpando:             Alright.

Officer Markham:         The first choice you have, without any arguing  . . .
                         do you want to go back to your apartment or do you
                         want to go to the precinct?

Villalpando:             Well, of course I want to go back home.

Officer Markham:         Okay.  That's up to you.  If you want to go back home,
                         we're going to go up there right now and get tucked in.  I'm
                         not going to have squad cars sitting outside.  I don't want
                         squads.  I don't want anything out of the ordinary. . . . Are
                         you willing to go into the apartment with us?

Villalpando:             And what do we do from there?

Officer Markham:         We going to sit down, get you out of handcuffs, let
                         you answer the phone like you normally do and keep
                         everything cool.

Villalpando:             Uh-huh.

Officer Markham:         You've got to do that tonight.  And then while you're
                         doing that, I'm going to be on the phone working on
                         probation.

Villalpando:             So we're just going to sit there and chill?

Officer Markham:         We are just going to sit there, yep, while the warrant is getting taken care of.  So the warrant is going to be done.  We're going to request a warrant regardless.  Your choice is, do you want to sit in your apartment and hang out, or do you want to hang out back at the precinct?  If you're at the precinct, they might keep one handcuff on you but–and it will take me a bit to get over there because I got to do some stuff with the warrant.  It's up to you. . . ."

**TR 36-37.**

Villalpando *still* doesn't understand the difference between his two choices; Officer Markham explains that police are going to sit on the apartment until the judge rules on the warrant; if the judge does not sign the warrant, "we don't get anything out of the apartment."  TR at 38.  If that happens, then the police would talk about charging Villalpando with what they've got already; but "most likely, the judge will sign the warrant."  Villalpando responds:

Well, see that's the thing though.  I'd rather just –
I'd rather, just honestly, like I say, work with you,
you know what I mean?

Officer Markham asks again: does Villalpando want to go to the apartment or to the precinct?  Villalpando answers a question that wasn't asked: "I don't want to go to jail at all, Denise."  Officer Markham repeats her question: does Villalpando want to go to his apartment and wait or does he want to go sit at the precinct?  Villalpando finally answers: "I guess let's go to the apartment and wait.  That's better than the precinct."

Officer Markham responds "Okay.  Then the second question I need to know is how much coke is up there right now?"  Villalpando cracks a joke: "I want to say probably about like, only about 30 bricks.  I'm just joking!  I'm just joking with you, I'm sorry."  Officer Markham states

that she knows. Villalpando gets serious: "it's probably like–I want to say maybe like nine ounces or something, but it's not really nine ounces 'cause it's half Inositol." Officer Markham responds "Okay. Awesome. Is there any 'hard' up there right now, or is it all powder?" Villalpando confirms that it's all powder.

This ends the substantive portion of the interview and Officer Markham steps out of the squad car to get the detective to make arrangements.

The task force did seek and obtain a search warrant for Villalpando's apartment. The affiant based most of his probable cause presentation on Villalpando's statements to Officer Markham, including his admission that his apartment contained nine ounces of cocaine, a safe with a firearm in it, a digital scale in the kitchen and an unknown amount of cash. The affiant also included the fact that the traffic stop had netted a small plastic bag of a substance that field-tested positive for marijuana.

Task force agents executed the warrant and seized cocaine and a handgun, among other things. This led to the revocation of Villalpando's state probation and he remains in state custody at this time. The federal grand jury returned its two-count indictment in June 2008.

## ANALYSIS

Villalpando seeks to suppress his admissions to Officer Markham on the ground that they were legally involuntary. Specifically, Villalpando contends that he made these admissions in reliance on promises of leniency that Officer Markham made to him but then did not keep. Villalpando offers a nice exegesis of the law, including cases from other circuits, and the government responds with a parallel exegesis of its own. Generally speaking, a confession is voluntary if, in the totality of circumstances, it is the product of a rational intellect and free will

14

and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.  Relevant factors include the defendant's age, intelligence, education, mental state, the administration of *Miranda* rights, the duration and environment of the interrogation, and the conduct of law enforcement.  *United States v. Ross*, 510 F.3d 702, 710 (7th Cir. 2007).

Here, there is no dispute that, *ceteris paribus*, Villalpando's age, intelligence, education, mental state and street smarts were sufficient for him to provide a self-inculpatory statement that was the product of rational intellect and free will.  Villalpando claims, however, that *ceteris non paribus*: Officer Markham improperly induced his inculpatory statements by making false promises upon which he relied.

The parties agree that honest promises cannot be a basis to suppress the admissions, *see United States v. Charles*, 476 F.3d 492, 497 (7th Cir. 2007), and that police are not forbidden from playing on a suspect's anxieties, fears and uncertainties, *see United States v. Westbrook*, 125 F.3d 996, 1005-06 (7th Cir. 1997), attempting to pressure or cajole him into making a statement, *see United States v. Rutledge*, 900 F.2d 1127, 1131 (7th Cir. 1990).  Police cross the constitutional line, however, when they mislead a suspect or exploit his anxieties to the point that he is unable to make a rational decision about whether to confess.  *Westbrook*, 125 F.3d at 1006.  An empty prosecutorial promise could prevent a suspect from making a rational choice by distorting the alternatives among which he is being asked to choose.  *Sprosty v. Buchler*, 79 F.3d 635, 646 (7th Cir. 1997); *cf. United States v. Kontny,* 238 F.3d 815, 818 (7th Cir. 2001)("we might have a more difficult case had [the agent] gone further and promised the Kontnys they would not be prosecuted if they played ball with him, for that conceivably is the kind of false promise that might induce a rational person to rely").  This is the argument that Villalpando raises in his motion.

15

Villalpando, however, has not supported this claim with any actual proof. Villalpando has not submitted an affidavit averring that he believed that Officer Markham had made specific promises to him, that he incriminated himself in reliance on those promises, and that these promises were false. Villalpando simply has submitted a recording of his interrogation and argued why certain parts of it would allow the court to conclude that his will was overborne. As the court observed in a slightly different context in *United States v. Peterson,* 414 F.3d 825 (7ᵗʰ Cir. 2005),

> The motion to withdraw the guilty plea has been supported by counsel's say-so rather than evidence. . . . [W]e did not say (let alone hold) that hearsay in an affidavit from counsel could be submitted in lieu of an affidavit by someone competent to testify about the disputed issue. . . . We cannot imagine any reason to relax the normal rules that limit judicial consideration to those statements in affidavits that would be admissible if made on the stand. Otherwise it would be all too easy to route bogus contentions through counsel and avoid prosecution for telling lies to the court.

414 F.3d at 827.

Villalpando has never directly, personally, claimed that Officer Markham lied to him and that her lies beguiled him into making admissions against his better judgment and free will. How could he? He more than held his own during the ebb-and-flow of his fluid negotiations with Officer Markham. Instead, he has approached suppression like a miner panning for gold, sifting from the interrogation each statement by Officer Markham that might arguably support his current position, then has clustered them in his two briefs to increase their weight. In his reply brief, he even bends time by offering a *nunc pro tunc* interpretation of the interrogation in order to capture his initial admissions within Officer Markham's subsequent statements. Villalpando has presented his arguments adeptly and the government has taken them at face value. However,

16

absent Villalpando's first-person assertion on the record that he then and there understood specific statements to be enforceable promises and that he confessed to the gun, the scale and the cocaine at his apartment in reliance on these promises, all we've got is verbal pyrite.

This, however, is not an invitation to Villalpando to amplify the record with an affidavit because it would not change the outcome. An objective review of the interrogation establishes that Officer Markham never offered street immunity to Villalpando. Although the statements highlighted by Villalpando fairly could be interpreted in isolation as an offer of consideration, it is clear from context that Officer Markham is making a meager *offer*– the task force won't arrest you tonight–and that this offer is in exchange for active cooperation, not for admissions about what Villareal is holding. Officer Markham doesn't need such admissions: she is confident that she will get her search warrant soon and seize all of Villalpando's drugs, money and weaponry regardless of what he tells her.[1]

It is equally clear that Villalpando understands that his looming probation hold–precipitated by the drug task force's traffic stop–has reduced the already-meager value of this offer to zero. Hence Villalpando's oft-repeated irritation with Officer Markham during the interrogation: he's going to jail, he's going to miss class, and it's all because the task force wouldn't behave civilly by giving him a jingle and arranging to chat over a cup of coffee, *see, e.g.,* TR 24. But even if they get past the probation hold, Villalpando and Officer Markham have additional

---

[1] In its response, the government requests permission to amplify its argument regarding inevitable discovery if necessary. *See* dkt. 27 at 1, n.1. It's not necessary. Villalpando admitted that he had a firearm (evidencing a § 922(g) violation) before Officer Markham made any statements that possibly could be deemed a false inducement. If it *were* necessary to amplify the record, I infer from the transcript that the government would be able to establish that a confidential informant recently had bought cocaine from Villalpando, *see, e.g.,* Interview Transcript at 24-25, and it would have put this information in its search warrant application in the event Villalpando had not itemized it to Officer Markham.

trust issues: Villalpando still is upset that the task force wants to leverage him into active cooperation rather than just ask. No matter what happens now, he's going to be Officer Markham's trick pony with a ring in his nose tethered to the task force. Even if he "mingles off," the detectives will keep a hand on his reins. And, as Officer Markham emphasizes, nothing is going to happen until after they perform the search.

In sum, the interrogation reveals a kinetic bargaining session between a task force agent looking for a new snitch and a peevish veteran of the system who is unhappy at having been painted into a corner. They do not reach a final agreement: at most, they have agreed to continue negotiations. The only promises that Officer Markham has made–and the only promises it would be objectively reasonable for Villalpando to infer–are that she and her superiors will intervene with the probation office, and the drug task force will not arrest him that night, with the goal being to get Villalpando back on the street as an informant before he is compromised.

Also clear from the interrogation is that Villalpando did not confess to possession of a firearm, a scale or nine ounces of cocaine in reliance on either of these promises. These were all side-issues, collateral to the negotiations over active cooperation. Villalpando is matter-of-fact in his admissions, undoubtedly realizing that the task force is going to find and seize everything in his apartment anyway. To the extent that some of the admissions occurred after some of the statements cited by Villalpando, this is coincidence, not cause-effect.

Finally, it is not clear on this record that Officer Markham broke either of the promises she actually made. I presume she did not: the parties don't talk about it, but I infer that the task force asked the probation office to cut Villalpando loose but the probation office said no. Another possibility is that when push came to shove, Villalpando would not commit to being an active

18

informant for the task force, perhaps because the task force wasn't offering enough in return. Without such a commitment, Officer Markham's conditional promises would not have vested.

In sum, during his interrogation by Officer Markham–which really was more of a bargaining session–Villalpando proved himself quite capable of recognizing and protecting his own interests. Officer Markham did not make any false promises upon which Villalpando relied in discussing his contraband.  Villalpando's admissions were legally voluntary.

## RECOMMENDATION

Pursuant to 42 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Christopher Villalpando's motion to suppress evidence.

Entered this 23nd day of October, 2008.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

19

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of                                                                                        Telephone
STEPHEN L. CROCKER                                                                        (608) 264-5153
U.S. Magistrate Judge

October 23, 2008

Meredith Duchemin
Assistant United States Attorney
660 West Washington Avenue, Ste. 303
Madison, WI 53703

Mark Eisenberg
Eisenberg Law Offices, S.C.
P.O. Box 1069
Madison, WI 53701-1069

   Re:___United States v. Christopher Villalpando
     Case No. 08-cr-098-bbc

Dear Counsel:

   The attached Report and Recommendation has been filed with the court by the
United States Magistrate Judge.

   The court will delay consideration of the Report in order to give the parties an
opportunity to comment on the magistrate judge's recommendations.

   In accordance with the provisions set forth in the memorandum of the Clerk of Court
for this district which is also enclosed, objections to any portion of the report may be raised
by either party on or before November 3, 2008, by filing a memorandum with the court with
a copy to opposing counsel.

   If no memorandum is received by November 3, 2008, the court will proceed to
consider the magistrate judge's Report and Recommendation.

       Sincerely,

       /s/

       Connie A. Korth
       Secretary to Magistrate Judge Crocker

Enclosures
cc: Honorable Barbara B. Crabb, District Judge

20

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.  *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**